**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| TYSON FOODS, INC. and TYSON CHICKEN, INC., | |
|       Plaintiffs, | Case No.: |
| v. | |
| ELIJAH (ELI) SKAGGS, MELISSA SKAGGS, SKAGGS BROS & SONS FARMS LLC, and DOES #1-6, | |
|       Defendants. | |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiffs Tyson Foods, Inc. and Tyson Chicken, Inc. (together, "Tyson"), by and through its undersigned counsel, respectfully submit this Complaint for Declaratory Relief against Defendants Elijah (Eli) Skaggs, Melissa Skaggs, Skaggs Bros & Sons Farms LLC, and Does #1-6 (collectively, "Defendants"), and hereby allege as follows:

**PRELIMINARY STATEMENT**

In the summer of 2023, Tyson made the difficult decision to close its broiler chicken processing plant in Dexter, Missouri. Over the year that followed, five contract farmers who serviced that plant—each represented by one or more of the same lawyers—have brought lawsuits against Tyson arising out of the Dexter closure and/or Tyson's later sale of the facility to table-egg producer Cal-Maine Foods, Inc. ("Cal-Maine"). These lawyers have now stated they will sue Tyson yet again on behalf of the Defendants.

Tyson has worked hard to treat its current and former Dexter contract farmers fairly under difficult circumstances. Tyson has continued to pay the named Defendants since closing the Dexter facility, and at the same rate that they were paid while Tyson was operating the

Dexter facility. Tyson also negotiated with Cal-Maine to ensure that the named Defendants had the opportunity to grow for Cal-Maine—which they turned down. Tyson was entitled to close its Dexter facility; it was entitled to sell its Dexter facility; and it was entitled to implement a deed restriction regarding the use of the facility to protect itself against financial arbitrage. Indeed, by selling the facility to Cal-Maine, Tyson created employment opportunities for former employees of the Dexter facility and contracting opportunities for current and former contract farmers that would not have existed if Tyson had simply left the facility shuttered.

Tyson has not harmed these Defendants and would prefer not to litigate against them. But given their threat of imminent litigation, Tyson comes to this Court seeking a declaration that its sale of the Dexter facility to Cal-Maine and any accompanying deed restriction did not violate the Sherman Act or Missouri's Antitrust Law.

## NATURE OF THE ACTION

1.      Tyson brings claims under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking declaratory relief from this Court arising out of the following actions. This Court has jurisdiction and authority to determine the actual controversy set forth below.

2.      In the summer of 2023, Tyson unilaterally decided to close its broiler chicken processing facility, feed mill, and hatchery in Dexter, Missouri (the "Dexter Complex"), which Tyson completed in October 2023.

3.      Tyson subsequently entered into a Purchase and Sale Agreement dated December 29, 2023, as amended on February 5, 2024 (the "Sale Agreement"), through which Tyson agreed to sell the Dexter Complex to table-egg producer Cal-Maine.

4.      Tyson's sale of the Dexter Complex to Cal-Maine closed on March 14, 2024.

5.      In connection with the Sale Agreement, Tyson also entered into a routine restrictive covenant (the "Property Use Agreement"), ████████████████████████

████████████████████████████████████████████████ and thus reduced the risk that Cal-Maine could profitably engage in arbitrage by reselling or leasing the Dexter Complex to a broiler processor.

6.     The Property Use Agreement became effective on March 14, 2024, when the sale of the Dexter Complex to Cal-Maine closed.

7.     On June 5, 2024, Grandview Poultry, LLP ("Grandview Poultry") commenced a putative class action in the Circuit Court of Stoddard County, Missouri, Thirty-Fifth Judicial District, captioned *Grandview Poultry, LLP v. Tyson Foods, Inc., et al.*, No. 24SD-CC00059 (Mo. Cir. Ct. Stoddard Cnty. June 5, 2024), against Tyson, Tyson employee Mark Avery, and Cal-Maine (the "Grandview Defendants"). Grandview Poultry alleged, among other things, that the sale of the Dexter Complex to Cal-Maine and ancillary Property Use Agreement violated the Missouri Antitrust Law, R.S. Mo. § 416.031, and that putative class members sustained injury—all of which Tyson denies—in the form of diminution in value of their business and property and through reduced competition for their services.

8.     The Grandview Defendants removed that case to this Court on July 5, 2024, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), in the action captioned *Grandview Poultry, LLP v. Tyson Foods, Inc., et al.*, No. 1:24-cv-00133-SEP (E.D. Mo.).

9.     Grandview Poultry and the Grandview Defendants have since settled their dispute and filed a stipulation of dismissal on August 9, 2024. (*Grandview*, No. 1:24-cv-00133-SEP, Dkt. 27.)

10.     The attorneys representing Grandview Poultry also represent another group of plaintiffs in a (non-antitrust) action, which includes claims and allegations related to Tyson's unilateral decision to close the Dexter Complex and the subsequent Sale Agreement, pending in

the Circuit Court of New Madrid County, Missouri, Thirty-Fourth Judicial District, captioned *Shawn Hinkle, et al. v. Tyson Foods, Inc. et al.*, No. 24NM-CV00313.

11.     In an August 8, 2024 filing in the *Hinkle* action, the attorneys for the *Hinkle* plaintiffs represented that they are also counsel to the Defendants named herein—Skaggs Bros & Sons Farms, LLC, its principals, Eli Skaggs and Melissa Skaggs (collectively the "Skaggs Family"), and Does #1-6 ("Doe Defendants"). (Ex. A, Pls.' Opp. to Defs.' Mot. that Seeks to Modify the Protective Order, *Hinkle*, No. 24NM-CV00313, at 3-4 (redactions in original)).

12.     The attorneys represented that "the Skaggs Family intends to file an antitrust class action against Tyson on behalf of themselves and the other remaining class members." (*Id.* at 4.)

13.     Further, "Counsel represents six other clients who have the same antitrust claims against Tyson." (*Id.*)

14.     The Skaggs Family and the Doe Defendants "intend to serve as class representatives in a soon-to-be-filed class action against Tyson" that "will mirror the one filed by Grandview Poultry." (*Id.*)

15.     This "soon-to-be-filed" action will seek "compensation for the devastating harm [the putative class] have suffered due to Tyson's blatant violation of the federal Sherman Act and Missouri's Antitrust Law." (*Id.* at 2.)

16.     Both this action and the Skaggs Family and Doe Defendants' threatened action are therefore related to the *Grandview* action.

## PARTIES

17.     Tyson Foods, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Springdale, Arkansas. Tyson Foods, Inc. is the parent company of Tyson Chicken, Inc.

18.     Tyson Chicken, Inc. is a wholly owned subsidiary of Tyson Foods, Inc., organized under the laws of Delaware with its principal place of business in Springdale, Arkansas. Tyson Chicken, Inc. is involved in the production of broiler chicken meat.

19.     On information and belief, Defendant Skaggs Bros & Sons Farms LLC is a Missouri limited liability company with its principal place of business in Fredericktown, Missouri.

20.     Skaggs Bros & Sons Farms LLC has two Breeder Pullet Production Contracts with Tyson Chicken, Inc.—for Skaggs Bros & Sons Farms (1 & 2) and for Skaggs Bros & Sons Farms (3 & 4) (collectively, the "Skaggs Contracts")—to produce pullets for the Dexter Complex.

21.     The Skaggs Contracts both became effective on May 19, 2019 and will conclude on August 20, 2027.

22.     On information and belief, Defendant Elijah (Eli) Skaggs is a resident of Fredericktown, Missouri and a citizen of the United States. Mr. Skaggs is a principal in Skaggs Bros & Sons Farms LLC.

23.     On information and belief, Defendant Melissa Skaggs is a resident of Fredericktown, Missouri and a citizen of the United States. Ms. Skaggs is a principal in Skaggs Bros & Sons Farms LLC.

24.     On information and belief, the Doe Defendants are business entities and/or natural persons, the identities of which are currently unknown to Tyson, that were engaged in the business of raising pullets, producing broiler eggs from breeder hens, or growing broiler chickens for processing in the vicinity of the Dexter Complex prior to its sale to Cal-Maine.

Tyson will seek leave to amend this Complaint to allege the true names and capacities of these Doe Defendants when they have been ascertained.

## JURISDICTION AND VENUE

25.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Tyson seeks a declaration that neither the sale of the Dexter Complex to Cal-Maine nor the Property Use Agreement violated federal antitrust law, specifically Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1-2. Attorneys for Defendants have represented to the New Madrid County Circuit Court that Defendants intend to file suit against Tyson "soon" alleging "blatant violation of the federal Sherman Act[.]" (Ex. A at 2.)

26.     The Court has supplemental subject-matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as Tyson seeks a declaration that neither the sale of the Dexter Complex to Cal-Maine nor the Property Use Agreement violated the Missouri Antitrust Laws, R.S. Mo § 416.031. Attorneys for Defendants have represented to the New Madrid County Circuit Court that Defendants intend to file suit against Tyson alleging "blatant violation of . . . Missouri's Antitrust Law." (Ex. A at 2.)

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because all of the named Defendants are residents of this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the Sale Agreement and Property Use Agreement at issue concern the sale and use of the Dexter Complex, which itself is located in this District.

## FACTUAL ALLEGATIONS

I.     **INDUSTRY BACKGROUND**

28.     Tyson is a multinational protein company that produces and processes broiler chicken meat for consumption. Tyson's Poultry division currently operates 28 broiler complexes, each of which typically has a plant to process broiler chickens, a hatchery, and feed mill.

29.     To supply each broiler processing plant, Tyson contracts with local farmers to produce and raise broiler, pullet, or breeder chickens according to Tyson's specifications.

30.     Pullet farmers raise pullets, which are sexually immature breeder hens, until they reach sexual maturity and are able to lay eggs.

31.     At maturity, Tyson transfers the pullets from pullet farmers to breeder farmers who care for the breeder hens that lay broiler eggs (also known as hatching eggs).

32.     Tyson collects the broiler eggs and incubates them at a hatchery.

33.     Upon hatching, the broiler chicks are placed with broiler farmers in growout houses to grow.

34.     Once the broiler chickens grow to slaughter weight, they are processed at Tyson's broiler processing facilities, such as the processing facility in the Dexter Complex.

35.     The chicken production cycle is illustrated below.



II.     **THE CLOSURE OF THE DEXTER COMPLEX**

36.     The Dexter Complex was originally constructed in the 1890s and had operated as a poultry processing plant since the 1930s. Tyson acquired the Dexter Complex in 1998 when it acquired Hudson Foods, another broiler processor.

37.     The Dexter Complex's broiler processing plant was far smaller than Tyson's newer broiler processing plants, with a single line capable of processing only 650,000 broiler chickens per week.

38.     Tyson's newer broiler processing plants, by contrast, have multiple lines and are capable of processing between 1.3 and 2.0 million broiler chickens per week, depending on the size of the bird.

39.     The Dexter Complex's broiler processing plant was geographically constrained (or "landlocked"), so Tyson could not expand the processing plant to increase production capacity to match processing plants at Tyson's newer broiler complexes.

40.     Due to its small size and age, the Dexter Complex's broiler processing plant also was not as operationally efficient as Tyson's newer broiler processing plants.

41.     As a result, the Dexter Complex had been unprofitable for Tyson to operate.

42.     Tyson determined after extensive analysis that it would take an investment of approximately ███████████ to modernize parts of the Dexter Complex—███████████ ██████████████████████████████████. But even with that significant investment, Tyson would not be in position to increase production capacity at the Dexter Complex's broiler processing plant.

43.     Rather than investing significant sums into an aging and geographically constrained facility in an attempt to return it to profitability, Tyson made the difficult decision to shift production at the Dexter Complex to other facilities.

44.     On August 7, 2023, Tyson publicly announced that it was closing the Dexter Complex.

45.     Tyson closed the Dexter Complex in October 2023.

46.     By December 2023, all of Tyson's broiler production at the Dexter Complex was shifted to other Tyson broiler production complexes.

47.     Tyson also transferred most newer equipment with value from the Dexter Complex to Tyson's other facilities, leaving behind at the Dexter Complex primarily aged and low value equipment that could not be used elsewhere within the Tyson network.

III.    **THE SALE OF THE DEXTER COMPLEX**

48.     For decades, the Dexter Complex had been a significant contributor to the local economy of Dexter, Missouri. Tyson recognized and was sensitive to the fact that its closure would impact the Dexter and surrounding community. To mitigate this impact, Tyson determined that it would be open to selling the facility to any interested party.

49.     Indeed, upon information and belief, Tyson could have achieved the highest price for the Dexter Complex if it could have sold the facility to another broiler processor because the facility was already configured for and had the local infrastructure to support broiler processing operations.

50.     Conversely, upon information and belief, the Dexter Complex would have sold for a lower price if it were sold to a company outside the broiler processing business because such a company would not have ascribed the same value to the facility's configuration and infrastructure and may have needed to undertake significant investments to convert the plant to an alternative use.

51.     Tyson entertained interest in the Dexter Complex from at least one competing broiler processor.

52.     But the broiler processor chose not to make an offer on the Dexter Complex.

53.     Upon information and belief, the broiler processor concluded that the Dexter Complex was unattractive because of its age, small size, the absence of expansion opportunities due to its geographically constrained nature, and the significant investment needed to modernize the facility.

54.     Tyson's discussions regarding the potential sale of the Dexter Complex continued with non-competitors, albeit at generally lower sale price points.

55.     Crucially, this difference in the potential sale price point created the possibility that a non-competitor purchaser could engage in arbitrage by buying the plant at a discount, ostensibly for a less valuable end-use and/or because it had to make significant investments to repurpose the plant, and immediately resell it to a broiler producer for a windfall. Tyson sought to avoid such an outcome.

56.     Tyson reached an agreement to sell the Dexter Complex—the processing facility, feed mill, and hatchery operations—to Cal-Maine, a national table-egg producer and distributor, on December 29, 2023.

57.     By selling the Dexter Complex to Cal-Maine, Tyson ensured that the facility would continue to be put to productive use, and provide employment and contracting opportunities to members of the Dexter community rather than close down for good.

58.     Cal-Maine and Tyson are not competitors in the meat processing space. Cal-Maine produces and sells table eggs (also known as shell eggs), which are fresh eggs sold for human consumption. Tyson processes broiler chickens and sells broiler chicken meat (among other things).

59.     On December 29, 2023, Cal-Maine announced its plan to establish an egg processing facility in Dexter, investing $13 million and creating approximately 96 jobs in the Dexter community.

60.     Based upon Cal-Maine's public statements, Tyson understands that Cal-Maine desires to create jobs, support farmers, and strengthen the agriculture industry in the area.

61.     On March 14, 2024, Cal-Maine announced its plans to convert and repurpose the Dexter Complex for use in table egg and egg products production.

62.     Cal-Maine's Dexter facility will include a chick hatchery, feed mill, maintenance of pullets, breeder, and layer flocks, and production, processing, packaging, and distribution of table eggs.

63.     The significant investments made by Cal-Maine to repurpose and improve the Dexter Complex and hire the farmers serving that facility has assuaged Tyson's concern about the potential for arbitrage with the Dexter Complex, and eliminated the need for a deed restriction that reduces the risk that Cal-Maine could profitably engage in arbitrage.

64.     Comfortable that Cal-Maine was not trying to flip the Dexter Complex and the Property Use Agreement was no longer necessary to protect Tyson's interests, Tyson entered a Termination Agreement with Cal-Maine that eliminated the Property Use Agreement on July 25, 2024. A Release of Memorandum of Understanding memorializing this Agreement was publicly recorded with the Recorder of Deeds in Stoddard County, Missouri on July 29, 2024, in Book 2024, Page 2309.

65.     The Property Use Agreement was challenged as an unlawful restraint of trade in *Grandview*, and Tyson anticipates that the Defendants will similarly challenge its legality in their forthcoming action.

66.     To the extent that Defendants theorize that the Property Use Agreement caused their business and property to diminish in value or caused price competition to diminish for their services, the Property Use Agreement was entered into in March 2024, more than four months after Tyson closed the Dexter Complex; the Property Use Agreement was in effect for only four months; during this brief four-month period, Tyson understands Cal-Maine was investing in the Dexter assets to ready them for table egg operations; and, upon information and belief, the Property Use Agreement has not impacted the speed or scope of Cal-Maine's operations.

67.     Rather, it was Tyson's unilateral decision to close the Dexter Complex that ended Defendants' production of poultry for Tyson, and any alleged diminution in value of Defendants' business and property flows from Tyson's unilateral decision to close the Dexter Complex and not the Property Use Agreement.

## IV.    **TYSON'S EFFORTS TO HELP THE DEXTER FARMERS**

68.     Upon shuttering the Dexter Complex in October 2023, Tyson had no further need for the breeder pullet farming services provided by Defendants under their existing contracts with the Dexter Complex.

69.     Tyson's unilateral decision to no longer process chicken at the Dexter Complex meant that Tyson ceased to furnish Defendants with breeder pullets and related materials required for Defendants' services.

70.     Because Tyson's unilateral decision to close the Dexter Complex ended Defendants' production of poultry for Tyson, any alleged diminution in value of Defendants' business and property or reduction in price competition for farmers' services would be a result *of that closure*, and not the subsequent Sale Agreement between Tyson and Cal-Maine.

71.     Indeed, Tyson's sale of the Dexter Complex to Cal-Maine created contracting opportunities for Defendants that would not have existed if Tyson had simply left the Dexter Complex closed.

72.     Despite its decision to close the Dexter Complex, Tyson undertook significant effort to ensure that Defendants and other farmers were not disadvantaged by this closure.

73.     Before selling the Dexter Complex to Cal-Maine, Tyson offered all active broiler farmers serving the Dexter Complex the opportunity to voluntarily terminate their contracts with Tyson in exchange for cash payments.

74.     At the time Tyson and Cal-Maine entered into the Sale Agreement, Tyson had no contracts with any broiler farmers that previously served the Dexter Complex.

75.     Tyson negotiated with Cal-Maine to ensure that Cal-Maine offered all breeder and pullet farmers that contracted with Tyson to serve the Dexter Complex—including the Skaggs Family—the opportunity to contract with Cal-Maine and remain in business.

76.     Cal-Maine offered those farmers terms that were equally favorable, if not more favorable, than their contracts with Tyson. By February 2024, Cal-Maine had secured contracts with multiple breeder and pullet farmers that had previously contracted with Tyson to serve the Dexter Complex.

77.     In fact, Cal-Maine offered to contract with Skaggs Bros & Sons Farms LLC and the Skaggs Family. The Skaggs Family and four other breeder or pullet farmers—namely, Grandview and the *Hinkle* plaintiffs—declined to contract with Cal-Maine before February 5, 2024.

78.     With respect to the breeder and pullet farmers that elected not to contract with Cal-Maine, such as the Skaggs Family, Tyson is obligated under the Sale Agreement to perform those contracts.

79.     Tyson continues to pay the breeder and pullet farmers that did not contract with Cal-Maine the amount owed under their operative contracts with Tyson, notwithstanding the fact that these farmers are no longer providing any services to Tyson. In other words, these farmers are receiving money but not doing any work for Tyson.

80.     Tyson has paid the Skaggs Family, for example, $9,936 each month for each of its contracts (i.e., $19,872 per month for both contracts) since the closure of the Dexter Complex in October 2023—the same amount that the Skaggs Family received each month while Tyson operated the Dexter Complex and the Skaggs Family was growing pullets for Tyson. Tyson's most recent payment to the Skaggs Family occurred in July 2024.

81.     The plaintiff in *Grandview* alleged that the Sale Agreement and Property Use Agreement resulted in diminished price competition for the plaintiff's services, and Tyson anticipates that the Defendants will make comparable allegations (with which Tyson vehemently disagrees).

82.     But, as set forth above, the Skaggs Family has suffered no present injury because they continue to be compensated today in the same amount as they were when Tyson operated the Dexter Complex.

83.     If anything, the Skaggs Family are better off today because their income has not changed and they are no longer incurring the labor, utility, and other costs associated with providing pullet farming services to Tyson.

## COUNT I

**Declaratory Judgment Act Claim Against All Defendants**
**For No Violations of Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1-2**

84.     Tyson incorporates by reference all foregoing paragraphs (and those in other Counts) as though fully set forth herein.

85.     This is an action against All Defendants for a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

86.     On December 29, 2023, Tyson and Cal-Maine entered into a Sale Agreement and Property Use Agreement pursuant to which Cal-Maine would assume ownership of the Dexter Complex subject to certain routine conditions and restrictions.

87.     Defendants in this action have expressed their intent to file a putative class action suit against Tyson for violations of the Sherman Act. (Ex. A at 2.)

88.     Tyson denies that the sale of the Dexter Complex and the Property Use Agreement constitute violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, under either the *per se* rule or the rule of reason, or of Section 2 of the Sherman Act, 15 U.S.C. § 2.

89.     Tyson further denies that Defendants are entitled to damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, or declaratory or injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26.

90.     Tyson was under no legal obligation to continue to operate the Dexter Complex.

91.     Having made the unilateral decision to close the Dexter Complex, Tyson was under no legal obligation to sell the Dexter Complex to any buyer.

92.     Having made the unilateral decision to consider a sale of the Dexter Complex, Tyson was under no legal obligation to sell the Dexter Complex to a competitor rather than to Cal-Maine.

93.     The Property Use Agreement was ancillary to the Sale Agreement, lawfully entered into, and has not harmed competition in any relevant market, including because it is no longer in effect.

94.     Tyson denies that Defendants have suffered any injury. But to the extent that Defendants allege that the value of their property has decreased or they have otherwise suffered injury, any such injury suffered by Defendants would be attributable solely to the closure of the Dexter Complex itself, and not to the Sale Agreement or the Property Use Agreement.

95.     Defendants therefore cannot allege any injury of the type the federal antitrust laws were designed to prevent.

96.     Accordingly, there exists an immediate, substantial, real, and justiciable controversy between Tyson and Defendants in connection with the absence of any violation of Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1-2.

97.     Tyson is entitled to a declaration pursuant to 28 U.S.C. § 2201 that neither the Sale Agreement nor the Property Use Agreement violated Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1-2, and that Defendants cannot prove the required elements of a cause of action under Sections 1 or 2 of the Sherman Act.

## COUNT II

**Declaratory Judgment Act Claim Against All Defendants
For No Violations of the Missouri Antitrust Law, R.S. Mo § 416.031, et seq.**

98.     Tyson incorporates by reference all foregoing paragraphs (and those in other Counts) as though fully set forth herein.

99.     This is an action against All Defendants for a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

100.    On December 29, 2023, Tyson and Cal-Maine entered into a Sale Agreement and Property Use Agreement pursuant to which Cal-Maine would assume ownership of the Dexter Complex subject to certain routine conditions and restrictions.

101.    Defendants in this action have expressed their intent to file a putative class action suit against Tyson for violations of Missouri's Antitrust Law arising out of the sale of the Dexter Complex and the Property Use Agreement. (Ex. A at 2.)

102.    Tyson denies that the sale of the Dexter Complex and the Property Use Agreement constitute a violation of the Missouri Antitrust Law, R.S. Mo § 416.031, under either the *per se* rule or the rule of reason.

103.    Tyson further denies that Defendants are entitled to damages or declaratory or injunctive relief under R.S. Mo. § 416.121.

104.    Tyson was under no legal obligation to continue to operate the Dexter Complex.

105.    Having made the unilateral decision to close the Dexter Complex, Tyson was under no legal obligation to sell the Dexter Complex to any buyer.

106.    Having made the unilateral decision to consider a sale of the Dexter Complex, Tyson was under no legal obligation to sell the Dexter Complex to a competitor rather than Cal-Maine.

107.    The Property Use Agreement was ancillary to the Sale Agreement, lawfully entered into, and has not harmed competition in any relevant market, including because it is no longer in effect.

108.    Tyson denies that Defendants have suffered any injury. But to the extent that Defendants allege that the value of their property has decreased or they have otherwise suffered

injury, any such injury suffered by Defendants would be attributable solely to the closure of the Dexter Complex, and not the sale of the Dexter Complex or the Property Use Agreement.

109.    Defendants therefore cannot allege any injury of the type the Missouri Antitrust Laws were designed to prevent.

110.    Accordingly, there exists an immediate, substantial, real, and justiciable controversy between Tyson and Defendants in connection with the absence of any violation of the antitrust laws of the State of Missouri.

111.    Tyson is entitled to a declaration pursuant to 28 U.S.C. § 2201 that neither the Sale Agreement nor the Property Use Agreement violated Missouri Antitrust Law, R.S. Mo § 416.031, and that Defendants cannot prove the required elements of a cause of action under the Missouri Antitrust Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Tyson respectfully requests that the Court enter a declaratory judgment against Defendants:

(a)    Declaring that Tyson's sale of the Dexter Complex to Cal-Maine does not violate Section 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1-2, or any other section of the Sherman Act, or the Missouri Antitrust Law, R.S. Mo. § 416.031;

(b)    Declaring that the Property Use Agreement, which prevented Cal-Maine from operating the Dexter Complex as a meat processing facility from March 14, 2024 until July 25, 2024, did not violate Section 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1-2, or any other section of the Sherman Act, or the Missouri Antitrust Law, R.S. Mo. § 416.031;

(c)    Declaring that Defendants were not harmed by the sale of the Dexter Complex to Cal-Maine or the brief existence of the Property Use Agreement; and

(d)    Granting Tyson any further relief the Court deems just and appropriate.

18

Date: August 9, 2024                    Respectfully submitted,


                                        By: */s/ Kail J. Jethmalani*
                                        Kail J. Jethmalani (*pro hac vice*
                                        forthcoming)
                                        Axinn, Veltrop & Harkrider LLP
                                        114 West 47th Street
                                        New York, NY 10036
                                        Telephone: (212) 728-2200
                                        kjethmalani@axinn.com

                                        Daniel K. Oakes (*pro hac vice* forthcoming)
                                        Axinn, Veltrop & Harkrider LLP
                                        1901 L Street NW
                                        Washington, DC 20036
                                        Telephone: (202) 912-4700
                                        doakes@axinn.com

                                        *Counsel for Plaintiffs Tyson Foods, Inc. and
                                        Tyson Chicken, Inc.*